Butler, Substituted Trustee, *v.* Commonwealth Trust Company et al., Appellants.

Argued October 3, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Mark T. Milnor,* for appellants.

*Paul H. Rhoads,* with him *John Fox Weiss,* of *Weiss & Rhoads,* for appellee.

OPINION BY MR. JUSTICE STERN, November 24, 1941:

Robert A. Johnston, a resident of Atlantic City, New Jersey, died in 1928, having in his will bequeathed the sum of $15,000 to Commonwealth Trust Company, a Pennsylvania corporation with its principal place of business in Harrisburg, in trust to invest the money and pay the income and ultimately the principal to certain designated beneficiaries. The Trust Company, acting under a misconception as to the law but in good faith, invested the trust fund in mortgage participations which were legal investments in Pennsylvania but not in New Jersey where Johnston's will was probated and his estate administered. In 1935 the Trust Company went into liquidation under the Act of May 4, 1933, P. L. 271. In 1939 it filed its account of the trust in the Orphans' Court of Atlantic County, New Jersey, to which the beneficiaries filed exceptions. That court, on March 14, 1940, surcharged the Trust Company, found that the beneficiaries were entitled to payment of the amount of the original fund with interest, and decreed "that there is a balance of corpus amounting to the sum of $15,000, and a balance of income amounting to the sum of $4,983.31." Appeals were taken to the New Jersey Pre-

rogative Court and the Court of Errors and Appeals, both of which affirmed the decree of the Orphans' Court. James N. Butler, being appointed substituted trustee, petitioned the Court of Common Pleas of Dauphin County for an order directing the liquidating trustees of the trust company to pay to him as such substituted trustee the sum of $19,983.31 with interest from the date of the decree. The liquidating trustees filed an answer in which they averred their readiness to turn over to petitioner the existing mortgage participation investments which had been made for the trust estate, any uninvested principal and undistributed income on hand, and a general creditors' participation certificate for the amount of the remaining deficiency in the award made by the New Jersey court. The learned court below decreed that the liquidating trustees should pay to the petitioner the sum of $19,983.31 with interest from March 14, 1940, and from that decree the liquidating trustees appeal.

No attack is attempted by appellants on the jurisdiction of the courts of New Jersey over the administration of the trust (see *Cronin's Case*, 326 Pa. 343, 348-350, 192 A. 397, 399, 400). They also concede that under Article IV, section 1, of the Federal Constitution this State is obliged to give full faith and credit to the proceedings in the New Jersey court and must enforce its decree. Nor is there any doubt as to the jurisdiction of the Dauphin County court with regard to the present petition, such jurisdiction being expressly conferred by the Act of May 26, 1937, P. L. 886. The sole question here in controversy is whether petitioner is entitled to priority, in the distribution of the assets in liquidation, over the general creditors of the Trust Company. The Act of May 4, 1933, P. L. 271, under which the liquidation is proceeding, does not prescribe the order of payment of the various types of debts due by the bank or trust company which is being reorganized, but sanctions any plan which is approved by the Department of Banking and adopted

by a certain proportion of the shareholders, depositors and other creditors. In the present instance the plan thus approved and adopted provides for payment first to depositors, second to general creditors and holders of guarantees given by the company in connection with issues of bonds, mortgages and investment agreements, and third to shareholders. But petitioner, seeking support in the decisions in *Erie Trust Company's Case (No. 1)*, 326 Pa. 198, 191 A. 613, and *Fenelli's Estate*, 323 Pa. 49, 185 A. 758; 330 Pa. 499, 199 A. 496, takes the position that his claim is not dependent upon any statutory scheme of preference, that he is seeking the reclamation of trust property, that he can disregard the fact that the Trust Company invested the trust fund in the mortgage participations, and that he should be allowed to recover the $19,983.31 in full out of the cash assets of the company in the hands of the liquidating trustees, it being admitted by appellants that the cash balance of the company never fell below that amount.

A trust creditor is not entitled, merely because of his being such, to preference over general creditors of an insolvent trustee. The trust relationship does not of itself confer a right of priority.\* Neither *Erie Trust Company's Case* nor *Fenelli's Estate,* properly understood, is analogous to the present situation. In the *Erie* case a trust company took from a decedent's estate of which it was executor some $25,000 under a claim, subsequently held by the court to be invalid, that it was entitled to that amount as commissions. The company be-

---

\* In *Erie Trust Company's Case* we said (p. 202) : "The real purpose of these provisions [in the Department of Banking Code of 1933] was to establish the principle that deficiencies in trust funds, and surcharges in respect thereof, were not, *as such,* to have any higher standing than general claims. An illustration of a claim on an *unpreferred* surcharge would be one based upon an act of negligence or mismanagement on the part of the trustee, as, for example, a failure to dispose of non-legal securities in the trust, or allowing trust funds to remain uninvested for an undue period of time."

came insolvent and went into the possession of the Secretary of Banking as receiver. It being shown that the cash funds of the company had never fallen below the amount taken from the estate, it was held that the beneficiaries could compel restitution out of the cash assets of the company prior to their distribution among other creditors and regardless of the order of preference prescribed by the Banking Code of May 15, 1933, P. L. 565, for the distribution of assets of institutions liquidated by the Secretary of Banking as receiver. The significant fact in that case was that the assets of the trust company had been improperly augmented by the $25,000 which the company had taken from the trust estate, and, as neither the company nor, therefore, its creditors had any right to that money, it is obvious that the general creditors would have been unjustly enriched had they been allowed to share in it. In *Fenelli's Estate*, 323 Pa. 49, 185 A. 758; 330 Pa. 499, 199 A. 496, a bank which was a trustee of a fund in a decedent's estate purchased mortgages the title to which it took in its own name. From this the presumption naturally arose that the bank purchased the mortgages with its own money and that the cash constituting the trust fund was still in possession of the trustee. It was therefore held that the substituted trustee could recover the trust fund if it could be traced into the cash assets of the bank.

The controlling circumstance in each of the two cases thus referred to is here wholly absent. The Commonwealth Trust Company did not appropriate to itself money belonging to the Johnston trust and place it in its own assets as in the *Erie* case, nor did it presumably invest its own money and leave the trust fund uninvested and intact as in the *Fenelli* case. On the contrary, it invested the money of the trust estate in mortgage participations for and on account of the trust, but, because these investments were not proper under the laws of New Jersey, they were subject to rejection by the beneficiaries and the Trust Company could be compelled, as

the New Jersey court decreed, to make good the original amount of the fund. The Company, however, being insolvent, and the question becoming one of distribution of assets among its creditors, the money which was employed in the purchase of the mortgage participations cannot be traced into the cash assets of the Company. Those assets have not been augmented by any addition from the trust, and a tracing of the fund could lead only to the mortgage participation investments.

The present case is ruled in effect by what was said by this court in *Stopp's Estate,* 330 Pa. 493, 199 A. 493. There a trust company which held a fund as testamentary trustee invested it in a certificate of participation in a mortgage pool. The beneficiary contended that the trust was a dry one and the trustee had no right to make the investment. The Orphans' Court decreed that the trustee should pay the beneficiary the amount of the fund. The trustee became insolvent and its affairs were taken over by the Secretary of Banking as receiver. The beneficiary attempted to establish a right of priority in the distribution of the assets of the company. We said (p. 496) : "The decree [of the Orphans' Court] . . . did not have any greater force or effect than would attach to any other order or decree for the payment of an amount due by a trustee to the beneficiary. The trust company having become insolvent, a situation arose in which the extent of appellant's right to enforce her claim, thus adjudicated, could . . . be determined only upon the liquidation of the assets of the company under direction of the Court of Common Pleas," and we indicated (pp. 498, 499) that, when her claim was presented in the liquidation proceedings, her remedy for the alleged wrong done by the trustee would be either to accept the mortgage participation certificate or to enforce against the general assets in the hands of the receiver an unpreferred claim for damages because of the deficiency in the trust fund resulting from the improper investment, and that, as security for such claim, she could enforce an

equitable lien upon the mortgage participation certificate. So here, petitioner is entitled to receive only what the liquidating trustees have offered to transfer to him, namely, the existing mortgage participation investments at their present value, any uninvested principal and undistributed income of the trust in cash, and a creditors' participation certificate for the amount of the remaining deficiency in the award of the New Jersey court. Nor can interest be recovered on the award, since, when it was made, the Trust Company was, and long had been, in process of liquidation under the statute.

The decree is reversed and the record remitted for further proceedings in accordance with this opinion. Costs to be paid out of the assets of the Trust Company in liquidation.